and Young, 21-608-61. We have five cases to hear. We'll see how far we go before taking a break, but we'll make it through the first case without a break, and the second one too as well. The first case of the morning is United States v. Abreu and Young, 21-608-61. Mr. Eckert. Good morning, Your Honors. My name is Stephen Eckert. I'm a CJA panel attorney. I represent Antony Daniel Abreu, the appellant in this case. The two issues I'd like to discuss today are whether the court erred in granting the government's pretrial motion in limine on Mr. Abreu's entrapment theory, thus not allowing a reasonably knowledgeable right of challenge, adjourned or dire. In addition, whether or not the court erred in refusing to allow Mr. Abreu's counsel to call the confidential informant's wife as a witness and thus not providing him with due process. Regarding this first issue, Your Honors. Can you talk up a little? Yes, Your Honor. Regarding this first issue that we've brought, the appellant in this case appeals to this court that he was allowed insufficient questioning to produce some basis for defense counsel to exercise a reasonably knowledgeable right of challenge. Prior to court, the government had filed a motion in limine preventing his trial counsel from inquiring anything or making reference to any type of entrapment theories adjourned or dire as well as an opening statement. The court subsequently granted that statement. In this case, Your Honor, that is true that the court certainly allows the discretion of the court to make that decision of what questions will be asked. However, in this particular case, it's Mr. Abreu's contention that the court certainly had sufficient information before it regarding his predisposition or lack thereof and that he had no criminal history, which is not part of the record, but it's something that the trial judge had before him prior to. I believe that's also . . . This issue came up when the Borgiale James hearing. Yes, Your Honor. Therefore, that issue too seemed to me to be one that can only be resolved after you hear whether or not there were co-conspirator statements, your disposition, inducement. Aren't those all fact-dependent? Correct, Your Honor, but as far as the inducement element goes, there was also the affidavit from the case agent that was before the court that described in sufficient detail multiple instances where they directed, controlled, and basically put together the conspiracy and made the case. So it wasn't so much that you had a confidential informant that became part and interfered or some type of interdiction in an ongoing drug organization. You had something, a whole case, that the confidential informant essentially created from scratch. Why on this issue, just a motion in limine relating to voir dire, why isn't just confirmation that jurors will follow the law? Then you put in the facts. You get the entrapment instruction. Where's the harm? Your Honor, I think there's a bias in every time you pick a jury to understand what they're thinking and how they might feel on a variety of issues. For example, in this case, the government, their questions asked how the jury felt about the use of a confidential informant. In fact, they got a response that one said they don't like that at all, more or less, and they had the ability to strike them. The government had that advantage. In this case, my client did not. Of course, if they're going to follow the law, the same would be true for the government's case. Let me ask you, Counsel, what's in this case that made it error even though it's not usually error? What's different about this case? Go ahead and see if you can respond. Yes, Your Honor. I believe, for example, in the Cervantes case, there is reference, at least to the agents in that case, that the other individuals were not rookies to the experience. There's often other histories where even if you can prove inducement, a defendant may not have an opportunity to show that he does not have a disposition. This is a case where there was no criminal history. There was no prior history of him dealing with any sort of drugs. We believe it is different in that regard. In this case, even based before trial on the affidavit, the criminal complaint that was presented to the judge, there was a considerable amount of that information that, again, provided and showed how much direction and organization that the confidential informant provided to this case. I think on its face, it was very clear that there was inducement in this case. I think on its face, it would have been fair to say that it's very reasonable for a judge to conclude prior to that an entrapment case defense would be made. In fact, it was asserted. But in this case, there was actually no criminal history whatsoever. And I think that is not exactly, it's not frequent, but I think it's more frequent or not that there is a criminal history. You had another issue and you're running out of time. You want to talk about it? Yes, Your Honor. Yes, Your Honor. And the second issue that we have is during the course of the examination, counsel had attempted to subpoena the wife of the confidential informant to question her about taxes, whether or not they were actually paid. What counsel wanted to do was to essentially, to visit an issue of tax evasion, of course. His character for untruthfulness. Yes, Your Honor. Yes, Your Honor. And in that case, he was not allowed to. And therefore, he was not allowed to, he was denied his due process, his confrontation clause under the Sixth Amendment. Now, in this particular case, the confidential informant had talked about earning in the past eight years a substantial amount of money. Judge Oserden, just because your time is running out, did he rule on this issue because 608B doesn't allow the extrinsic evidence? Or did he say something about these taxes wouldn't be due during this year anyway, or both? I believe it's both, Your Honor. That's my understanding of his ruling and why he ruled the way he did. That's correct, Judge. However, what is different about this case than you might have in other witnesses, this witness has a contract with the government. He has a contract that he has to report his taxes. In this case, he didn't know whether he paid it or not. He relied upon his wife. The government's case agent did not know when asked whether he paid taxes on it or not. The government's own guidelines, attorney general guidelines, require them to know. It's their own rules. They're using a confidential informant, Your Honors, when they use them at their own risk. All right, counsel. Hard to split your time. Your Honor. Good morning. May it please the court, I am Michael Wiseman, and I represent Daryl Young, the other appellant in this case. Unless the court has a different preference, I'd like to use the bulk of my time, if not all of it, to discuss the first issue that I briefed, which is the seating of Juror 28. Just to refresh the court's recollection, Juror 28 was trained by the case agent Elder. What exactly was the relationship with the liege agent, between Juror 28 and the— Yes. The relationship, as the record shows, was that Agent Elder trained Juror 28 and patrolled with him for 10 years. In addition, there were some social encounters that they've had subsequent to that time, but I don't think those social encounters are the real point here. The law relevant to this case was actually reviewed by Judge Higginbotham in 2003 in the Salas case, which I cite in my brief at page 20. In that case, Your Honor, you discussed Justice O'Connor's concurrence in Smith v. Phillips, which set forth four categories of implied bias, and those four categories— We know the categories. You know the categories. Is yours the fourth, the extreme? Yes. The point here is that that is not an exhaustive list of categories. Obviously, Justice O'Connor couldn't imagine every relationship that might occur, so this Court has adopted the extreme circumstances test. And I would submit to Your Honors that the relationship between the juror and the case agent who sat at counsel table, who testified about all aspects of this investigation, is extreme. You know, I was trying to think of a way to articulate this, but we all know, you know, the dangers that law enforcement officers— How is this concern expressed to the trial judge? Well, it was expressed in terms of the relationship. I'll concede that the words implied bias were never articulated by defense counsel, but the district court certainly commented on the relationship and found that there was nothing in the relationship that evidenced bias. Before you really explore that extreme concept, just what about the threshold issue? Less standard of review, more if there's no objection from counsel, and then a peremptory isn't used. But Judge Oserden does explore it. There's no concealment by the prospective juror. Yes. It's almost impossible for me to say that wouldn't be examined under plain error. How do we know that counsel didn't strategically think this case is all about government overreaching? The best juror to assess that would be the juror that sat next to the lead agent. Well, this is an objective standard. What Your Honor is proposing is what subjectively was in counsel's mind, and I don't know that that's the correct standard. No, I'm not proposing anything about subjective. I'm just saying is there any Fifth Circuit law you would point us to that would say we examine a denial of a motion based on implied bias for anything but plain error when there's been no objection, nothing brought to the district court's attention? Stepping back, I would submit to the court that asking for the or exercising a cause is sufficient to preserve the error. Then the question is, is it an implied bias or an actual bias? I believe that with what was presented and with what the district court articulated, the implied bias concept was in there. I would also point out that, ironically, the implied bias waiver argument was itself waived by the government. They didn't make that argument in their brief. I've had no chance to respond to it. Their waiver argument in their opening, or in their only brief, related to whether there needed to be a contemporaneous objection following the denial of the challenge for cause. This idea that somehow . . . Why didn't you strike it? Why didn't you, perhaps, dismiss it when you exercised one of your strikes? Yeah. I mean, this is a very, I was trying to think of a helpful response to this question. Martina Salazar says, if you use a preempt, you don't preserve the issue. It's not clear to me how that should ultimately get worked out. As the law stands now, counsel was within their rights to not use a preempt and, frankly, to preserve that issue. I'm sorry. Go ahead. I'm sorry. The question becomes then, if what you denied is simply another preemptory challenge, in other words, you acted not to take him out preemptorily, obviously. You didn't strike him from your list. Yes. And as I suggest, I think that is a, I'll call it a conundrum. The only issue would be that you were, supposedly would be that then you would manage to strike some other member of the panel. Yeah. You know, I don't know, and again, I think this does get to the subjective object, that this isn't a claim of ineffective assistance of counsel. We don't know what was in counsel's mind. We do know that the Supreme Court has said that counsel could stand on the record as it existed and not exercise the preempt, and if they had exercised the preempt, I'd be arguing something else. So it's not a clear, there's not a clear answer to that question. All I know is counsel here did what counsel is expected to do. They made the challenge for cause. They chose to preserve the issue, all within their rights pursuant to Salazar. Go ahead. What I was starting to say before is that in terms of the extreme circumstance here, we all know what law enforcement officers go through on a daily basis. They trust their lives and their safety to each other. I would submit to the court that the relationship between the lead case agent and juror 28 was such that it's, I think it's more severe than being an employee of a prosecuting agency. So, for example, a clerk in a prosecutor's office who doesn't barely ever see the prosecutors and maybe just runs files around would be excluded under the Smith v. Phillips test, and I would submit that the relationship between Agent Elder and being a trainer of this office, I mean, how could this juror possibly judge Agent Elder's credibility? He trained a man, he patrolled with a man, he trusted his life, and conversely, Agent Elder trusted his life to this prospective juror. I frankly don't know why in the world the district court wouldn't grant that challenge for cause. It seems, as the language is used, it would seem prudent to . . . Remind me of the exact chronology. There was an objection for cause . . . Yes. . . . then the impartiality inquiry, and then a renewed objection for cause, or do I have it wrong? No. There was not a second objection, and my position is it doesn't have to be a second objection. If I say to a court, objection hearsay, and the court says overruled, I don't have to say objection to that ruling. That's like the old law about exceptions.  You don't have to . . . But at this point, Judge Ozudin did explore considerably the allegation of bias before saying can you still be impartial. So is the theory of implied bias that it's got to be imputed to him, no matter what the inquiry? It's going to be what? Imputed to him. Bias has to be. Oh, yes. So we have to be skeptical of any negative that, oh, yes, that was a close relationship, but it's been over a decade. Right. But my . . . I think the point of implied bias is the age of the relationship, some of the subjective details are not relevant to the inquiry. The inquiry is could this juror possibly have . . . But the logic of your argument is there is no point for a district court to ever inquire at all, because once the objection is made and the facts of the prior relationship are understood, there's nothing to be done with that juror. Is that correct? Well, I think the district court would be perfectly within its rights and authority to inquire further about the nature of the relationship. That's it. Right. However . . . That makes sense. Yes. Once you have this relationship out on the record, I think the challenge for clause was required. And I'll yield my nineteen seconds. Thank you, Your Honors. All right, counsel. May it please the Court. Good morning. My name is Jonathan Buckner, and I represent the government in this case. Is there another counsel with the government at this time? Yes, Your Honor. I also have Gaines Cleveland, the chief of our office at Appellate Court. Welcome. The trial court in this case properly conducted jury selection. The trial court properly conducted the trial, and the trial court properly sentenced the defendants. Accordingly, this court should affirm the judgments of convictions in this case. First, I'd like to speak about this implied bias argument raised by Mr. Young on appeal. We need to decide whether or not . . . you need to decide whether or not the issue is properly preserved. And the government raised that in its opening brief, indicating that the standard of review is plain error because implied bias never came up during the trial court proceedings. In fact, when juror number 28's relationship with Agent Elder came to light, defense raised a challenge for cause to not only juror number 28, but all other jurors with law enforcement connections. All of them. It's about the same time. And when Judge Ozerton reached his ruling on this issue, he indicated that juror number 28 had explained that he could be and would be impartial. Young's counsel never said, Your Honor, that doesn't matter because this is implied bias. The first time that we see implied bias raised is during the appeal of this case. So accordingly, it wasn't preserved, and plain error does apply. Now, turning to the facts of this case about juror number 28, what the record actually shows is 23 years before the trial in this case, juror number 28 had the case agent as one of his field training officers. He worked in law enforcement for 10 years, and then 13 years before the trial in this case, they quit working together. And after that, he only saw the case agent occasionally on the river. What Young is arguing is that because of that relationship, he's per se implied. He can't sit on the jury, regardless of the information and responses during voir dire that he provided to the trial court. And that's just not what the law is in this circuit. In fact, the law in this circuit stringently requires a defendant or a jury to be a juror. And the fact of this case shows that it's dissimilar. It's incredibly dissimilar. So because the issue wasn't raised, because the jury . . . It seems pretty engaged, which is usually what we look for. In other words, objection for cause, you know, the lead agent sat next to my client for a dozen years. That almost fits into O'Connor's two of her three categories, employee of the government, close relationship to a witness. The reason that it doesn't in this case is because it wasn't developed during voir dire. Defense could have questioned . . . But Judge Ozerden did, extensively. He did, and he looked at what the defendant's responses, or the juror's responses were, and was able to make a credibility determination and impartiality determination as required. True. I guess, but what he doesn't do is dispel that intrinsic relationship that any person in that situation, looking across the table all through trial, would say, I sat with that guy for a dozen years. So it's not so much that Ozerden didn't extract sort of, I can be impartial. The law seems to be more, we can't accept a juror's statement in that situation. We're going to impute bias to him because we need to be skeptical that he would deny that longstanding prejudice. What this court has done in the past is look at whether or not those relationships have been voluntarily disclosed. Concealment is a big issue in a lot of the cases. And when it's not concealed, this court does look to what the trial court's ultimate determination was as to whether or not they could be impartial. And at that point, it becomes review for clear error only? Well, because the issue wasn't raised properly, it still should be plain error. Well, put aside, let's say I'm not persuaded that it's plain error. Is the standard of review clear error because Judge Ozerden elicited facts? Or is it, is Brooks controlling and this is de novo review? It's an abuse of discretion standard because it doesn't fit one of the circumstances set forth. Right. But abuse of discretion occurs if there's an error of law. It seems to me our circuit and others do look at implied bias cases as legal ones. Do you agree? I agree, but only in situations where they actually are implied bias. So you've got to kind of have to decide whether this even meets one of the circumstances, assuming everything that Young argues is true, whether it meets one of the circumstances set forth in Phillips to raise the issue of applied bias. Otherwise, Judge Ozerden is entitled to the pinnacle of deference because it's a jury selection matter. It's a sliver of law, but it's understandable that you aren't going to really allow a juror to sort of cleanse themselves when they've had something like a family relationship or they're a witness to a crime. That's correct, but the circumstances of this case aren't close to that. You've got someone who 13 years before trial was the last time that he worked with a case agent. In a car together for how many years before that? That's also not clear because it wasn't delved into by defense during the trial. Judge Ozerden said that Agent Elder was one of his FTOs, one of them, not his sole training officer, one of them. So those issues could have been elicited. They weren't. Then you compare Judge Ozerden's how he handled juror number 28 with another prospective juror, and that was a juror whose son-in-law was married to the case agent's daughter-in-law. In that case, Judge Ozerden said, look, because of the relationship here, I don't think we can let this juror sit, and he granted the forecalls challenge. But, again, that's because he was properly looking at what the jurors could say, what the jurors said and their ability to be impartial, and in this case, juror number 28 was unequivocal about his ability to be impartial. I know. That's the argument, and that is distinguishing of Scott. He's not concealing it, but you have to worry that someone that closely aligned for so long just being able to say, I guarantee you I can be impartial, and then you look across the room at your best friend for a dozen years, that's what the law is trying to protect against, not even to put jurors in that predicament where we have to depend on them denying a prior intimate relationship. That's correct, Your Honor, but I think that this case fits well within some of the cases that were cited in the government's brief as far as not even reaching those standards. If you look at the case of Uranga v. Davis, in that case, during the sentencing proceeding, a juror discovered that the defendant had destroyed his yard while he was fleeing from police. So he was actually a victim of that crime, and the court said, no, it's not an extreme circumstance set forth in Phillips, so it's okay that that juror sat, even though he was essentially a victim of that defendant's crime. One of the things you seem to be pushing back on from our questioning is just that there's evidence here of a particularly close relation. I need to look at that transcript again, but highlight for me fairly, what is it going to show me again? What do we know about the ten or so years that they were both in law enforcement? What juror number 28 explained to the court was we served together in law enforcement for ten years. We patrolled together. Not necessarily for ten years. Sir? But not necessarily for ten years. Not necessarily for ten years the length that they patrolled together. Do we know anything about the length of time that they were side by side physically in some way? Well, Your Honor, it's not even clear that they patrolled in the same car. That's part of the issue. They could have both been patrol officers at the same time, in which case  But in the same department. But in the same department, yes, Your Honor. And what we know is that they did it for ten years and that they stopped about 13 years before trial in this case. So again, 23 years before trial, Agent Elder was one of the FTOs for juror number 28 and that they worked for the same local law enforcement agency for ten years. You said he worked with him on patrol for ten years. You mean that these two fellows were out working side by side, engaging the world? That's a pretty close relationship. That's like foxhole buddies. It's about you got to cover each other's back. And that's not office work. They're two people facing common dangers in law enforcement. I just suggest to you that to me strikes a very close relationship. And ten years is ten years. You accent, and rightly so, the time that had passed since then. But I'll go back to the time that they were together, on patrol together. Ten years is a long time. It is, Your Honor. But that kind of goes to the heart of part of the problem that we have when the issue of implied bias wasn't raised at the district court level. Because if it had been, or if Young had inquired into that relationship during Gwadir, then we would have been able to look a little bit closer at what the specifics of those circumstances were. Well, I confess, having spent an awful lot of time in trial courts, that I would have granted that for cause in a minute for no other reason than I didn't want to leave a nagging error. I didn't want to happen to what's happening here now and argue the merits of it. In other words, the government didn't have that kind of right to have them there. Yes, Your Honor. I'm not arguing against it. I know the law is stringent about implied bias, and rightly so. But it just seems to be kind of an odd situation. Yes, Your Honor. But again, Young wasn't without remedy. He had a peremptory challenge and failed to use it on Juror No. 28. There was one remaining at the time that Juror No. 28 was seated. And Counsel for Young is correct. We didn't raise the waiver issue per se, but they have cited to Martinez-Salazar, and that's the Supreme Court decision where the court said that if you use a peremptory on a juror that should have been excused for cause, that you can't then raise it on appeal. But what's interesting about Martinez-Salazar is Justice Scalia's concurrence in that case where he says, you know what, the inverse should also be true, that if you could have challenged someone, if you could have used a peremptory on someone that you challenged for cause and didn't get it granted, that you did waive it or assume the risk if you then let that juror be seated. So there's multiple levels of issues here, and the fact is Judge Oserden, with the record that he had before him, listened to Juror No. 28 and made a determination that he could have been impartial. And if Young believed that he couldn't, he could have struck him. He could have used his peremptory to strike him. So for that reason, we believe the court should be affirmed on that issue. Now, turning to the issues raised by Abreu on appeal, the first issue is whether or not the court erred in declining to allow them to get into the entrapment theory of defense during voir dire. And Cervantes is controlling on this issue. That's a published Fifth Circuit opinion that says basically if a judge declines to inquire or declines to allow a party to inquire about entrapment during voir dire, that that issue is not an appealable issue in some respect. It's not an appealable issue that has merit because the facts are that the defendant, that Abreu had an opportunity to hear what the jurors had to say and make a reasonably knowing use of those peremptories or challenges for cause. And he takes issue with the fact that, well, the government was able to ask questions about the confidential source. I wasn't able to ask questions about entrapment, but the use of the confidential source goes to entrapment. So still, it allows them to use their knowledge in making their challenges peremptory and otherwise. The other thing that I'd point out with respect to the entrapment issue during voir dire is the fact that Judge Ozerden's ruling on that issue was very limited. He actually said it doesn't mean you can't talk about the evidence. It just means you should not mention entrapment during voir dire. So it's not like he said you can't get into the use of a confidential source, whether or not someone would respond certain ways. He just said don't use the word entrapment. So, again, the court should affirm Judge Ozerden's ruling in that regard too. Well, I assume an entrapment instruction eventually was earned and given. An entrapment instruction was given, Your Honor, and while not discussed here in oral argument today, that was another issue that Abreu raised in his opening brief, and that was that the judge modified the pattern instruction to explain that a jury could look at post-solicitation conduct in determining whether or not a defendant was predisposed to commit the crime. And all of the law that Judge Ozerden used to craft that— You're saying the pattern instruction is a little outdated. It's a district court construct, and our law still controls. Is Ozerden's practice—I forget the transcript— does he receive questions from counsel to do voir dire or does he let counsel do it themselves? He initially does voir dire, and then counsel is given the opportunity to conduct voir dire. And that's where the word entrapment couldn't have been used. Yes, Your Honor. That's correct. The other issue that Abreu raised is the court's decision not to allow the confidential source's wife to testify. And as set forth in our brief again, Rule 608B clearly shows that that was the correct decision. Rule 608B precludes a party from attempting to impeach the character for truthfulness of a witness with extrinsic evidence of bad acts unless you do it while that witness is testifying. So he couldn't use the alleged failure to pay taxes to impeach the confidential source through a different witness. He had to do it through that confidential source. And then there is a carve-out where you can use evidence of extrinsic acts to... You can do it to contradict a witness's testimony on a material piece of evidence. And in this case, Judge Oserden made a finding that it's not material because the confidential source actually said, my wife handles the taxes, I don't really know what goes on with them, and it wasn't a payment for his work in this case. So again, that issue was properly decided by Judge Oserden, and the court should affirm his ruling with respect to that case. If the court... Counsel didn't bring it up in oral argument, but it's in the briefs, the sentencing manipulation issue. Is there any circuit that hasn't recognized sentencing manipulation? That hasn't recognized? Hasn't recognized it. In other words, government sting, government undercover informant says, what about, let's do a deal for 200 kilos. And so they mention it in sort of negotiations, and then when they show up, it's 2 kilos. The guidelines control that district courts got to attribute the drug amount to the amount mentioned in the negotiations? What the courts generally look to is whether or not there's some evidence that they could follow through with the deal. And so in this case, the deal was you're going to pay for 10 kilos of cocaine and you're going to get 7 kilos of cocaine fronted to you, or that you're going to take on credit and pay it back. The prices discussed were around $20,000 per kilo, and Defendant Young and Defendant Abreu showed up with about $200,000 in cash. So it's clear that they were ready to move forward with purchasing the 10 kilos of cocaine and then getting the 7 kilos of cocaine fronted to them as well. And that's actually supported by the record too. So that was one issue that was raised regarding sentencing. Another issue that Young raised was whether or not he should have received an enhancement for leadership or organizing. And again... We review that deferentially, but it is a little unusual, a little bit unusual when probation doesn't recommend it, and yet the district court still gives it. You saw his argument, which is if we affirm that here, every single drug conspiracy, people will get the aggravated rule. Do you agree? I disagree, because you have to look at what Young actually did in this case. And what he did in this case was he arranged for the transportation of the trapped vehicle from Philadelphia to Mississippi, and he was arranging for it to be shipped back to Philadelphia as well. He was intimately involved in the financing for the deal, and there's actually some points in the record as well where he's instructing Abreu as to what to do. At one point he says, Makes no sense, tell them to send us a video. That was Young speaking to Abreu during a control call between Abreu and the confidential source. Young's also described by Abreu as his client and partner, but it's clear that Abreu needed to get the drugs so that Young could test them, because ultimately he was going to be deciding whether to move forward with the actual transaction or not. And so for those reasons, because of his involvement in managing the assets and managing how this conspiracy actually was going to take place, he should have received the leadership enhancement and correctly did. I yield the rest of my time. Thank you. Your Honors, I'd like to address one issue regarding the manipulation issue, and in this particular case it is the informant who had the genesis, the creation, and entirely made the case, and it was upon his suggestion to use the 17 kilos of cocaine versus something else. In doing so, he is essentially sentencing an undue burden on my client. He should have been held responsible for two kilos of cocaine. That's all that ever existed in the case. That's all that was there. That's what was seen. There was discussion of others at the inquiry and at the insistence of the confidential informant, not of my client nor the co-defendant in this case. He's being held accountable for drugs that never existed, Your Honor, and in this case we believe that he should have received an offense level of a 26 rather than a 32 because of that. Thank you. Two minutes won't do it for me, but I'll do my best. We're dealing here with the Sixth Amendment right to a fair trial as grounded in having a fair and impartial jury. It's hard to imagine a more fundamental right than that. If you look at the actual voir dire of Juror 28, when he told Judge Oserden that he actually trained me, Judge Oserden didn't inquire further. I would submit that I think the record is sufficient to show extreme circumstances, but if there are gaps in this record, you can attribute them as well to the district court failing to explore further. It was after that colloquy of the juror that the challenge for cause was made, and frankly I would think that a lawyer sitting in the shoes of defense counsel in this case would have thought the record is made. No need to ask more. It's clear. They patrolled together. They trained together. What else do you need to know? I just want to talk about the procedural issues here for a moment. The issue raised in the government's brief was that there was no contemporaneous objection after the denial of the challenge for cause. They never argued in their brief that the implied bias ruling or question was waived. I never had a chance to respond to that. On Thursday of last week, they filed a 28-J letter that this court properly struck. So that's really not in the case. I mean, think of the irony here. They have waived their argument that my client has waived the claim. They can't do that. If there's going to be waiver here, it's got to apply to them as well. It's just not fair otherwise. Just with my four seconds. Thank you, Your Honor. I appreciate your time and consideration. Thanks, counsel, all of you, for your information that you provided today and answering of our questions. We'll take the case under advisement. You're excused.